**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| FLEETZERO INC.,<br><br>Plaintiff,<br><br>v.<br><br>M/V ATLANTIC POWER, bearing Official No. 1059685, her engines, tackle, furniture, apparel, appurtenances, etc., *in rem*, M/V ATLANTIC WIND, bearing Official No. 9270347, her engines, tackle, furniture, apparel, appurtenances, etc., *in rem*, and ATLANTIC OCEANIC, LLC, *in personam*<br><br>Defendants. | CIVIL ACTION NO.: 6:25-CV-01686<br><br>IN ADMIRALTY,<br>F.R.C.P. 9(h), RULE C, AND 9 U.S.C. § 8 |

**FLEETZERO, INC.'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO VACATE**

**MAY IT PLEASE THE COURT:**

Plaintiff, Fleetzero Inc. ("Fleetzero"), respectfully submits this Memorandum in Opposition to the Motion to Vacate filed by Defendants, Atlantic Oceanic, LLC ("Atlantic"), *in personam*, and M/V ATLANTIC POWER and M/V ATLANTIC WIND, *in rem*, (collectively "Vessels") (and all together the "Defendants") [R. Doc. 17]. Pursuant to Rule C(1)(b) of the Supplemental Rules for Admiralty or Maritime Claims ("Supplemental Rules") and the Federal Arbitration Act, 9 U.S.C. § 8, Fleetzero properly arrested the M/V ATLANTIC POWER and the M/V ATLANTIC WIND. A maritime lien is not required for a Rule C arrest under the plain terms of the rule. Accordingly, the Defendants' Motion to Vacate – based solely on the lack of an assertion of a maritime lien – should be denied.

## FACTUAL BACKGROUND

Fleetzero bareboat chartered the M/V PACIFIC JOULE ("JOULE") to Atlantic Oceanic, LLC ("Atlantic") pursuant to a Standard Bareboat Charter Party agreement dated March 29, 2024 ("Charter Party"). Pursuant to the Charter Party, Fleetzero delivered the JOULE to Atlantic. After delivery, Atlantic committed numerous material breaches of the Charter Party. Accordingly, Fleetzero notified Atlantic that the Charter Party was terminated and demanded redelivery of the vessel. Subsequently, Atlantic initiated arbitration proceedings in accordance with the Charter Party. *See* [R. Doc. 21]. Fleetzero's claims proceeded to arbitration in the City of New York, in accordance with the Rules of the Society of Maritime Arbitrators, Inc. ("SMA").

After a two-day hearing, the arbitration panel issued a unanimous Partial Final Award on April 9, 2025. The SMA panel held that (a) Fleetzero properly terminated the Charter Party, (b) the Charter Party was terminated, (c) Fleetzero was entitled to repossess the vessel and (d) Atlantic Oceanic's request for attorney's fees and costs was denied. The Partial Final Award also stipulated that Atlantic was liable to Fleetzero for damages sustained as a result of Atlantic's breaches. Damages were to be calculated at a later date. *See* [R. Doc 21, Exhibit 1].

Pursuant to 9 U.S.C. § 12, "[n]otice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered." Atlantic has not made any attempt to change or modify the April 9, 2025 Partial Final Award. As such, Atlantic has lost its opportunity to vacate, modify, or correct the Partial Final Award.

Subsequent to the Panel's Partial Final Award, the parties submitted additional documents and argument to determine the issue of damages. On October 28, 2025, the Panel issued a Final Award, finding Atlantic liable to Fleetzero in the amount of $4,157,724.59. On November 19,

2025, the Panel issued a corrected Final Award to correct a clerical error in the original damages calculation which had erroneously increased the costs of arbitration by $10,000. As such, the Panel revised the award made to Fleetzero to $4,147,724.59. *See* [R. Doc. 21, Exhibit B].

Under the terms of both the Partial Final Award and the corrected Final Award, the Panel authorized confirmation of the awards by any court with proper jurisdiction, and this Court qualifies as such a court. As such, Fleetzero instituted this proceeding to confirm and enforce the arbitration award and to arrest the M/V ATLANTIC POWER ("POWER") and M/V ATLANTIC WIND ("WIND") as security for the $4,147,724.59 owed to Fleetzero.

Based on the Verified Complaint, arrest warrants were issued. As discussed in detail below, the POWER – a vessel that had not moved in weeks and is not under any active contract – turned off its AIS (required vessel monitoring system) and attempted to leave the Western District of Louisiana. She was reported to Fleetzero's counsel the following day by the owner of a dock facility who was not paid by Atlantic for provisioning the vessel.

## LAW AND ARGUMENT

As stated in the Complaint, Fleetzero arrested the POWER and WIND, pursuant to Rule C and 9 U.S.C. § 8, to "obtain security for the payment and enforcement of the . . . Awards." *See* [R. Doc. 1, 21]. Rule C to the Supplemental Rules for Admiralty or Maritime Claims provides:

> An action in rem may be brought:
>
> (a) To enforce any maritime lien;
>
> (b) Whenever a statute of the United States provides for a maritime action in rem or a proceeding analogous thereto.
>
> Except as otherwise provided by law a party who may proceed in rem may also, or in the alternative, proceed in personam against any person who may be liable.

SUPP. R. C(1)(b) FOR CERTAIN ADMIRALTY AND MAR. CLAIMS ("Rule C").

Thus, a vessel can be arrested either (1) to enforce a maritime lien ***or*** (2) whenever a statute

of the United States provides for a maritime action *in rem* or a proceeding analogous thereto. Thus, Atlantic's entire premise that the arrests must be vacated because no maritime lien exists is contrary to the plain language of the statute. And, as noted in its Verified Complaint and by this Court, Fleetzero never asserted the existence of a maritime lien.

Rather, Fleetzero's application for arrest was based on security for the arbitration and a Rule C arrest under a "statute of the United States." The Federal Arbitration Act ("FAA") "authorizes a party to an arbitration agreement to seek several kinds of assistance from a federal court." *Badgerow v. Walters*, 596 U.S. 1, 4 (2022). Specifically, under the FAA, a party may apply to the court to confirm an arbitral award, 9 U.S.C. § 9, and under Section 8, a party may bring an action in admiralty ***to obtain security against an eventual arbitral award***. *The Anaconda v. Am. Sugar Ref. Co.*, 322 U.S. 42, 46 (1944) (analyzing Section 8 of the FAA and noting "Congress plainly and emphatically declared that although the parties had agreed to arbitrate, the traditional admiralty procedure [of arrest or attachment] with its concomitant security should be available to the aggrieved party without in any way lessening his obligation to arbitrate his grievance rather than litigate the merits in court."). By its plain language then, Section 8 of the FAA permits a party to bring actions *in rem* against either the offending vessel "***or other property***" of the defendant:

> If the basis of jurisdiction be a cause of action otherwise justiciable in admiralty, then, notwithstanding anything herein to the contrary, the party claiming to be aggrieved may begin his proceeding hereunder by libel and seizure of the vessel **<u>or other property of the other party</u>** according to the usual course of admiralty proceedings, and the court shall then have jurisdiction to direct the parties to proceed with the arbitration and shall retain jurisdiction to enter its decree upon the award..

9 U.S.C. § 8 (emphasis added). This language clearly recognizes that the arrest provided for in Section 8 is similar to a Rule B attachment of *any property* of the Defendant which is allowed prior to judgment. "The Purpose of Section 8 is to permit a party having an admiralty cause of

action to commence a suit in admiralty, despite an agreement to arbitrate, so that 'the vessel or other property' may be seized and held as security until the arbitration is concluded." *Greenwich Marine, Inc. v. S.S. Alexandra*, 225 F. Supp. 671, 674 (S.D.N.Y. 1964); *see also The Sydfold*, 25 F. Supp. 662, 662-63 (S.D.N.Y. 1938) ("in a case cognizable in admiralty a party claiming to be aggrieved may begin proceeding by libel and seizure of the vessel or other property in the usual way, and the court shall then have jurisdiction to order arbitration and shall retain jurisdiction to enter decree on the award. The purpose of section 8, 9 U.S.C.A. § 8 is to allow an aggrieved party the benefit of security obtained by attachment; to achieve this end the arbitration is made a phase of the suit in admiralty.")

And, as courts have recognized, the federal district court retains jurisdiction to enter a decree and enforce the arbitration award. *Newpark Shipbuilding-Pelican Island, Inc. v. Rig Pan Producer*, 261 F. Supp. 2d 756 (S.D. Tex. 2003). In *Newpark*, the district court affirmed arrest of a vessel under Rule C to secure an arbitration and retained jurisdiction to enter a final decree on the award, meaning that the vessel "or other property" remained under arrest for the entirety of the arbitration. *Id.* ("the Court retains jurisdiction to rule on procedural matters and to enter a decree following the arbitration. *Cf. Atl. Fertilizer & Chem. Corp. v. Italmare, S.p.A.*, 117 F.3d 266, 268-69 (5th Cir. 1997) (holding that a pending arbitration did not impede the district court's ability to grant security); *Transportes Caribe, S.A. v. M/V FEDER TRADER*, 860 F.2d 637, 638-39 (5th Cir. 1988) (holding that the district court retained jurisdiction to rule on procedural issues, such as granting counter-security, and to enter a decree upon the arbitration award, despite staying the case pending arbitration)).

As such, as an aggrieved party seeking security for its arbitration award, Fleetzero rightfully invoked both Rule C and the FAA to arrest the POWER and WIND. Fleetzero does not,

and has not, alleged that Fleetzero has a maritime lien over either vessel – but such a lien is not a prerequisite to arrest under Rule C and the FAA. Stated another way, the FAA plainly and unequivocally provides for the arrest of "other property of the other party." Fleetzero has properly arrested the POWER and WIND in accordance with Supplemental Rule C(1)(b) for Admiralty or Maritime Claims and under the express authority of Section 8 of the FAA. These statutes, together, unequivocally permit a party in an admiralty dispute to commence proceedings by seizing "***other property***" of the defendant. If that right exists at the commencement of the arbitration and allows for attachment pre-award, then *a fortiori* that right exists during the arbitration or to assist in enforcement of the award. This is especially true given, as discussed above, the district court retains jurisdiction over the attached property (and, if included the *in personam* defendant) to enter a final decree.

The POWER and the WIND, while they may happen to be vessels, clearly constitute "other property." Fleetzero's actions were therefore fully authorized by federal law and consistent with established admiralty procedure.[1]

The FAA provides the framework for securing arbitration awards through *in rem* proceedings. For example, in *The Anaconda v. American Sugar Refining Co.*, the owner of a barge chartered the vessel to American Sugar Refining Co. 322 U.S. 42, 43 (1944). After an alleged breach, American Sugar Refining brought suit against the vessel owner, *in personam*, and the

[1] Fleetzero likewise notes that theoretically, Fleetzero would also be justified in arresting or attaching the Vessels pursuant to Rule B of the Supplemental Rules for Admiralty and Maritime Claims as property of Atlantic to secure the eventual judgment to be entered by this Court against Atlantic consistent with the arbitral proceedings. Nevertheless, after the initial arrest of the ATLANTIC POWER in April of 2025, *see* Civil Action No. 25-431, Atlantic shortly thereafter appointed a registered agent for service of process in the Western District of Louisiana (the location of the Vessels) to thwart this very procedural mechanism. *See* **Exhibit A**, La. Secretary of State, Business Search for Atlantic Oceanic (showing registration and appointment of a registered agent on April 11, 2025). Indeed, it is quite telling that Atlantic's current registered agent for service of process has also recently filed various motions to withdraw as counsel of record in various pending actions in Louisiana federal courts. *See* Civil Action No. 25-431, R. Doc. 26. But for this appointment of an agent, Fleetzero could undoubtedly attach the Vessels using Rule B and then seek to have them sold to satisfy the $4,000,000+ judgment entered by this court.

barge, *in rem*. *Id.* The vessel owner challenged the court's ability to hear both the *in personam* and the *in rem* claims. *Id*. Turning to the language of 9 U.S.C. § 8, the Supreme Court held that "Congress plainly and emphatically declared that although the parties had agreed to arbitrate, the traditional admiralty procedure with its concomitant security should be available to the aggrieved party without in any way lessening his obligation to arbitrate his grievance rather than litigate the merits in court." *Id.* at 46. In essence, Congress intended to preserve the historic security protections of admiralty law throughout the arbitration process. *Id.* The Court noted that without the ability to seize a vessel, arbitral awards might be unenforceable if the vessel rarely returned to U.S. jurisdiction. *Id.*

Accordingly, 9 U.S.C. § 8 permits an aggrieved party, such as Fleetzero, to maintain its contractual agreement to arbitrate without losing its ability to pursue an *in rem* action against a vessel as security. *Id.*; *see also E.A.S.T., Inc. of Stamford v. M/V Alaia*, 867 F.2d 1168, 1173 (5th Cir. 1989) (holding that 9 U.S.C. § 8 and Rule C permit the seizure of a vessel in order to obtain security throughout the arbitration process); *The Sydford*, 25 F. Supp. 662, 662-63 (S.D.N.Y. 1938) (holding that 9 U.S.C. § 8 allowed the court to retain jurisdiction over the case to ensure the aggrieved party could keep the security obtained through attachment of the vessel); *Greenwich Marine, Inc. v. S.S. Alexandra*, 225 F. Supp. 671, 674 (S.D.N.Y. 1964) (concluding that 9 U.S.C. § 8 permits an aggrieved party to initiate proceedings against a vessel to obtain security).

In this very case, Fleetzero acted to confirm and secure its arbitration award—valued at over four million dollars—by arresting the POWER and WIND. After the complaint was filed and warrants of arrest issued, but before the U.S. Marshals Service could deputize National Maritime Services, LLC to arrest the vessels, the POWER attempted to evade arrest by departing the port where it had been sitting idle and not working for over 6 months. The POWER went as far as

disabling its Automatic Identification System ("AIS") in direct violation of 33 C.F.R. § 164.46. As a result, neither Fleetzero nor any other entity could locate the vessel. The POWER remained completely out of reach until a dock manager contacted Fleetzero's counsel and reported that the vessel was at 2516 Third Street, Berwick, Louisiana 70342, preparing to leave that location with its AIS still turned off. This was the exact worry the Supreme Court noted in the *Anaconda* and is precisely why Fleetzero has instituted this proceeding. The actions of the POWER and its owners make clear that, without arrest, Fleetzero faces the loss of its security and any meaningful ability to enforce and collect its $4,000,000+ arbitral award.

Finally, to the extent Atlantic argues that the use of Section 8 is precluded because the arbitration is complete, Fleetzero refers the Court to recent communication received indicating Atlantic's intent to file a motion to vacate the arbitration award. *See* **Exhibit B**. Reserving all objections to this process, including that Atlantic has waived such a right, if Atlantic seeks to vacate any award then Section 8's remedy clearly applies and the arrest of the POWER and WIND remains valid as security in favor of the arbitration.

Maritime commerce is inherently transient; vessels move freely across borders, and owners can vanish overnight. Without the ability to seize a vessel, arbitration and any award produced by that process becomes a hollow promise, leaving aggrieved parties with nothing more than an unenforceable award. Fleetzero's complaint did not ask for extraordinary relief; it simply invoked the very mechanism designed to ensure fairness and accountability in admiralty disputes, and any perceived need of Atlantic can be evaluated as a claim for countersecurity, if applicable. Based upon the actions noted above, the motion to vacate is being sought so that the POWER can be removed from this jurisdiction before the arbitration award becomes enforceable. This is contrary to the intent of Section 8 and the attachment right granted therein. The POWER's deliberate

attempt to evade arrest, by fleeing its berth and disabling its AIS in violation of federal law, proves this risk is real. If this Court does not uphold the arrests, Fleetzero's security will be lost, and the policy underlying the Federal Arbitration Act will be undermined. For that reason, the arrests must stand, and Fleetzero must be allowed to secure the enforcement of its awards.

**CONCLUSION**

For the reasons set forth above, Fleetzero properly exercised its rights under Rule C(1)(b) of the Supplemental Admiralty Rules and 9 U.S.C. § 8 of the Federal Arbitration Act to arrest the M/V ATLANTIC POWER and M/V ATLANTIC WIND. Accordingly, Fleetzero respectfully requests that this court deny Defendants' Motion to Vacate.

Respectfully submitted,

*/s/ L. Etienne Balart*
L. ETIENNE BALART (La. Bar No. 24951)
SARA B. KUEBEL (La. Bar No. 38305)
JONES WALKER, LLP
201 St. Charles Avenue, 48th Floor
New Orleans, Louisiana 70170-5100
Telephone: 504-582-8584
Email: ebalart@joneswalker.com
skuebel@joneswalker.com

***Attorneys for Fleetzero, Inc.***

**CERTIFICATE OF SERVICE**

I hereby certify that on this 24th day of November, 2025, a copy of the foregoing has been forwarded to all counsel of record by United States mail, first class postage prepaid, electronic filing, email and/or facsimile.

*/s/ L. Etienne Balart*
L. ETIENNE BALART (La. Bar No. 24951)