UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| FLEETZERO INC | CASE NO. 6:25-CV-01686 |
| VERSUS | JUDGE ROBERT R. SUMMERHAYS |
| M/V ATLANTIC POWER ET AL | MAGISTRATE JUDGE DAVID J. AYO |

### MEMORANDUM RULING AND ORDER

Before this Court is a MOTION TO VACATE filed by Atlantic Oceanic, LLC, as claimant to the *in rem* defendants M/V ATLANTIC POWER and M/V ATLANTIC WIND, seeking to vacate the arrest of said vessels. (Rec. Doc. 17). Plaintiff Fleetzero, Inc. filed an opposition (Rec. Doc. 24) to which Atlantic Oceanic replied (Rec. Doc. 29). Following a November 28 status conference, the parties filed supplemental memoranda at the Court's request. (Rec. Doc. 32, 38). The motion is therefore ripe for ruling.

### Factual and Procedural Background

On November 4, 2025, Fleetzero filed a VERIFIED COMPLAINT FOR RULE C RELIEF AND CONFIRMATION OF AWARD against the M/V ATLANTIC POWER and M/V ATLANTIC WIND, *in rem*, and against Atlantic Oceanic, *in personam*. (Rec. Doc. 1). Atlantic Oceanic is the owner of the vessels, both of which were within located within the Western District of Louisiana. (*Id.* at ¶¶ 3-5). The dispute between Fleetzero and Atlantic Ocean arises out of the charter of the M/V PACIFIC JOULE by Fleetzero to Atlantic Oceanic under a Standard Bareboat Charter Party. (*Id.* at ¶ 11). Atlantic Oceanic allegedly breached the Charter Party by failing to timely pay charter hire

1

and interest, refusing to deliver the vessel to Fleetzero, and failing to pay the balance of a $500,000 performance guaranty pursuant to the Charter Party. (*Id*. at ¶ 12).

Atlantic Oceanic initiated an arbitration proceeding with an arbitration panel issuing a unanimous Partial Final Award in favor of Fleetzero on April 9, 2025, with damages being determined at a later date. (*Id*. at ¶¶ 14-16). According to the complaint, Atlantic Ocean did not attempt to vacate, modify or correct the award. (*Id*. at ¶¶ 17-18). On October 28, 2025, the panel issued a final award in Fleetzero's favor for $4,157,724.59. (*Id*. at ¶ 19).

Fleetzero seeks to confirm the October 28, 2025 arbitration award (*Id*. at ¶¶ 21-25) and sought to arrest the two vessels under Rule C of the SUPPLEMENTAL RULES FOR ADMIRALTY OR MARITIME CLAIMS (*Id*. at ¶¶ 26-32). On the same day the complaint was filed, Fleetzero also filed an EX PARTE MOTION TO APPOINT CUSTODIAN OF THE VESSELS AND PERMIT MOVEMENT OF THE VESSELS WITHIN DISTRICT, an EX PARTE MOTION FOR ISSUANCE OF ORDER AND WARRANT OF ARREST OF VESSELS, and a MOTION FOR ORDER DEPUTIZING G. ROBERT TONEY AND/OR ALAN SWIMMER IN LIEU OF U.S. MARSHAL IN SERVING WARRANT OF ARREST. (Rec. Docs. 2, 3, 4). On November, 5, 2025, the undersigned granted the aforementioned motions (Rec. Docs. 8, 9, 12) and issued warrants for the vessels (Rec. Docs. 10, 11).

On November 11, 2025, Fleetzero filed a VERIFIED EX PARTE MOTION TO PERMIT MOVEMENT OF VESSEL, seeking to move M/V ATLANTIC POWER from Morgan City, Louisiana to Berwick, Louisiana. (Rec. Doc. 14). By order dated November 13, 2025, the undersigned granted that motion. (Rec. Doc. 15).

2

On November 20, 2025, Atlantic Oceanic filed the instant motion (Rec. Doc. 17) and a motion requesting expedited consideration (Rec. Doc. 18). Both motions were referred to the undersigned. (Rec. Doc. 19). By order dated November 21, 2025, the undersigned granted expedited consideration, set a briefing schedule, set a telephone status conference for November 28, 2025, and set a hearing on the motion for December 1, 2025. (Rec. Doc. 20). Also on November 21, 2025, Fleetzero filed a VERIFIED FIRST AMENDED COMPLAINT to correct a mistake in the original complaint, which mis-stated the arbitration panel's final award by $10,000. (Rec. Doc. 21).[1] On November 25, 2025, Fleetzero filed a MOTION TO CONFIRM ARBITRATION AWARDS, currently pending before Judge Summerhays. (Rec. Doc. 27).

The November 28, 2025 status conference was held as scheduled. (Minutes, Rec. Doc. 37). The parties agreed that the instant motion presented only questions of law such that an in-person hearing was not necessary, so the December 1, 2025 hearing was canceled. The undersigned requested additional briefing from the parties to address certain points and questions raised during the status conference. As requested, Fleetzero filed its supplemental brief on December 2, 2025 (Rec. Doc. 32), and Atlantic Oceanic filed its brief on December 4, 2025 (Rec. Doc. 38). The motion is therefore fully briefed and ripe for ruling.

---

[1] Also on November 21, the undersigned received by email from counsel for Fleetzero with a proposed order to permit the relocation of M/V ATLANTIC POWER. This email copied an attorney represented to be counsel for Atlantic Oceanic who was not enrolled. After consulting with enrolled counsel for Atlantic Oceanic, the undersigned permitted the relocation of the M/V ATLANTIC POWER. (Rec. Docs. 22, 23).

## **Law and Analysis**

To be sure, the analysis of the propriety of the arrest of the two vessels evolved as the briefing progressed. In its original supporting memorandum, Atlantic Ocean argued solely that Fleetzero's failure to plead a maritime lien was fatal to its effort to invoke Supplemental Rule C and Section 8 of the Federal Arbitration Act, 9 U.S.C. § 8. (Rec. Doc. 17-1). Fleetzero responded unequivocally that it was not asserting a maritime lien over either vessel and that such a lien was not required under Supplemental Rule C. (Rec. Doc. 24). Rather, Fleetzero's right to arrest the vessels arose under Supplemental Rule C(1)(b) and not Supplemental Rule C(1)(a), as discussed in more detail below. In its reply, Atlantic Oceanic cited for the first time the Fifth Circuit's decision in *Sembawang Shipyard, Ltd. v. Charger, Inc.*, 955 F.2d 983 (5th Cir. 1992), and submits that the reasoning in that case is dispositive. (Rec. Doc. 29). Given that *Sembawang* might be dispositive, the undersigned directed Fleetzero to address its effect in a supplemental memorandum and permitted Atlantic Oceanic to respond. Both parties complied with that request. (Rec. Docs. 32, 38).

The remedies and procedures applicable to admiralty and maritime claims are governed by the Supplemental Rules for Admiralty or Maritime Claims as part of the Federal Rules of Civil Procedure. The instant motion is brought pursuant to Supplemental Rule E(4)(f), which states in pertinent part: "Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or

attachment should not be vacated or other relief granted constituent with these rules." To carry its burden, the arresting party—here, Fleetzero—must present sufficient evidence to show that there were "reasonable grounds" for attachment and that the arrest is supported by "probable cause." *Casillo Commodities Italia, S.P.A. v. M/V LONG CHEER*, 2017 WL 2804925, at *2 (E.D. La. June 28, 2017); *see also Diesel Specialties, LLC v. M/V MOHAWK TRAVELER*, 2009 WL 1036085, at *2 (E.D. La. Apr. 17, 2009); *In re Murmansk Shipping Co.*, 2001 WL 699530, at *2 (E.D. La. June 18, 2001). Under Rule E(4)(f), Fleetzero has the burden of proof to show why the arrest or attachment should not be vacated. *See generally Richardson Stevedoring & Logistics Servs., Inc. v. Daebo Int'l Shipping Co., Ltd.*, 2015 WL 1781712 (E.D. La. Apr. 20, 2015).

Fleetzero acknowledges that it does not have a maritime lien and is therefore not proceeding under Supplemental Rule C(1)(a) but is instead proceeding under Supplemental Rule C(1)(b), which provides that an action in rem may be brought "[w]henever a statute of the United States provides for a maritime action in rem or a proceeding analogous thereto." According to Fleetzero, the "statute of the United States" is Section 8 of the Federal Arbitration Act, which provides:

> If the basis of jurisdiction be a cause of action otherwise justiciable in admiralty, then, notwithstanding anything herein to the contrary, the party claiming to be aggrieved may begin his proceeding hereunder by libel and seizure of the vessel or other property of the other party according to the usual course of admiralty proceedings, and the court shall then have jurisdiction to direct the parties to proceed with the arbitration and shall retain jurisdiction to enter its decree upon the award.

9 U.S.C. § 8. As to the applicability of Section 8 to Supplemental Rule C(1)(b), Atlantic Oceanic contends that *Sembawang* applies and controls.

Sembawang was a Singapore corporation that had performed repairs on the M/V CHARGER at its yard in Singapore. 955 F.2d at 985. The CHARGER was owned by Charger, Inc., a Liberian corporation. *Id.* While the CHARGER was within the Eastern District of Louisiana, Sembawang filed suit against the CHARGER *in rem* and Charger, Inc. *in personam*. *Id.* The district court arrested the CHARGER under Supplemental Rule C and later stayed the case pending arbitration.

After the arbitrator made an award to Sembawang, both parties moved to lift the stay, and Sembawang moved to confirm the award. The district court confirmed the award and entered judgment against the CHARGER and Charger, Inc. *Id.* After finding that Singapore law applied to Sembawang's rights against the CHARGER and Charger, Inc., the Fifth Circuit addressed how those rights could be protected in United States courts.

Sembawang relied on Supplemental Rule C(1)(b), as does Fleetzero. The Fifth Circuit noted that the "language, '[w]hether a statute of the United States provides for a maritime action in rem,' allows a party to proceed under Supplemental Rule C *if a United States statute allows a party to proceed in rem*." *Id.* at 987 (brackets in original & emphasis added). On the "statute of the United States" issue, Sembawang asserted that Section 8 allowed it to proceed under Supplemental Rule C(1)(b). The Fifth Circuit held that Section 8 "does not confer jurisdiction or a right against the vessel in rem" and concluded that "no 'statute of the United States provides for a

6

maritime action in rem' in the present case, that Sembawang can invoke no 'analogous' statute, and that Sembawang therefore cannot proceed in rem under Supplemental Rule C(1)(b)." *Id*. at 988.

Here, Fleetzero's options are more limited that Sembawang's were. Fleetzero acknowledges that it cannot proceed under Supplemental Rule B as Sembawang was permitted to do. (Rec. Doc. 24 at 6 n. 1). While Fleetzero ably and correctly distinguishes the facts in *Sembawang*, the Fifth Circuit's ultimate conclusion appears to control even under the facts of this case. Whether the Fifth Circuit intended its holding in *Sembawang* to be limited to "the present case" as it stated—or was intended to be broader than the circumstances in that case—is for the Fifth Circuit to decide. 955 F.2d at 988. This Court is unable to conclude here that the Fifth Circuit's holding would not apply to the situation in the instant case, *i.e.*, the arrest of vessels in a suit to confirm an arbitration award, although the Court will note for what it is worth that Fleetzero's frustration is understandable.[2]

## Conclusion

For the reasons set forth above, the MOTION TO VACATE filed by Atlantic Oceanic, LLC (Rec. Doc. 17) is GRANTED and the WARRANT OF ARREST as to the M/V ATLANTIC POWER (Rec. Doc. 10) and the WARRANT OF ARREST as to the M/V ATLANTIC WIND (Rec. Doc. 11) are VACATED.

---

[2] Fleetzero notes that the Automatic Identification System on the M/V POWER was disabled and that neither Fleetzero nor any other entity could locate the vessel. (Rec. Doc. 24 at 7-8).

THUS DONE in Chambers on this 23rd day of December 2025.

_____
David J. Ayo
United States Magistrate Judge